IN THE MATTER OF THE ESTATE OF E. S. TURPIN, DECEASED.

*Claims of administrators for moneys paid for taxes, repairs, etc.*

Claims of administrators for moneys paid for taxes and repairs of real estate of intestate, and for labor in gathering crops after his death, are valid debts of the estate, and they are entitled to a credit therefor.

A claim for money deposited with intestate for safe keeping in his life time, held under the circumstances of the case a valid debt of the estate.

*Decided June 20, 1887.*

EXCEPTIONS to the account of administrators.

*John Coffey* and *William E. Jones*, for administrator.

*C. H. Blackburn* and *West & Clevinger*, for guardian.

GOEBEL, J.

Estate of Turpin, Deceased.

J. M. Miller, as guardian of Ida Bell Turpin, files exceptions to sixty-two items of the account of the administrators filed herein, alleging that the various amounts paid by the administrators were paid without authority of law, and that the claims paid were not debts of the estate.   The majority of these items refer to rents collected and payment of taxes, and for repairs made on the several pieces of real estate of which E. S. Turpin died seized.   It appears from the testimony that E. S. Turpin died in September, 1879 ; that E. K. and Phil T. Turpin were shortly thereafter appointed administrators ; that part of the real estate was partitioned in 1881 ; that from September, 1879, to 1881 these administrators collected the rents, paid the taxes, and made all repairs.   In 1884 they filed an account, charging themselves with the rents so collected and crediting themselves with the amounts paid for taxes and repairs on such real estate.   No exceptions are taken by the guardian to the items by which these administrators are charged with rents collected; and as these administrators have seen fit to charge themselves with the rents, this court is not called upon to consider the question whether an administrator has authority to collect rents.   But if called upon it would adhere to the ruling made in the case of *Campbell* v. *McCormick, Adm'r., etc.* which was affirmed by the Circuit Court.   Same case, 1 Circuit Court Reports, 504.

The evidence and circumstances are much stronger in this case for upholding the ruling made in the case of *Campbell* v. *McCormick*. The administrators having charged themselves with the rents, are they entitled to a credit for taxes and repairs? I think they are. To hold otherwise would be inconsistent with the decisions rendered, where administrators having taken possession of real estate other than that set apart for the payment of debts, collected the rents, accounted for them, and applied them to the discharge of debts due from the estate, were held entitled to a credit. I see no distinction between the cases where an administrator paid the debts with such rents or applied them to taxes and repairs. Certainly no injustice can be done to the exceptor, since no complaint is made as to the amounts paid, and since the payment of taxes and making repairs were for the preservation of the property by which this minor benefited, the guardian has no reason now to complain.

Voucher eighteen shows an amount paid for beef from January 1, 1879, to January 1, 1880, and so much of this amount as may be shown to have been paid for beef delivered after September 15, 1889, will be disallowed. To that extent this claim is not a debt of the estate.

The administrators, by voucher nineteen, credit themselves with the payment of $2,493.45 to A. M. Turpin. From the evidence it appears that A. M.

Turpin is the widow of the decedent; that the apprais-
ers appraised the personal property of the decedent at
$2,493.45; that they set off to her for her year's allow-
ance $2,000; and that subsequently she took the
personal property at the appraisement, and gave her
receipt for the full amount of the appraisement.    As
she was entitled to $2,000, this amount will be applied
to the payment to her for the personal property; the
administrators will be charged with the difference,
to wit: $493.45, and this sum will be disallowed as a
credit.

Vouchers Nos. 24, 25, 26, 27, 28 and 29 show pay-
ments to various persons for labor performed after the
death of E. S. Turpin.    From the testimony it appears
that Mr. Turpin was a farmer; that after his death,
in September, 1879, labor was employed to gather
the growing crops, all of which was necessary for
the preservation of the same; that the crops were
afterward sold by the administrators, for which they
have accounted, and that the heirs received the bene-
fits of the same.    The costs and expenses for gather-
ing such crops are proper items, and the adminis-
trators are entitled to a credit.    The exceptions to
these items will be overruled.

Voucher No. 46 shows a payment to J. L. Hosbrook
for making a survey in the year 1875,    The evidence
shows this to be a debt against the estate.    The item
is allowed and the exception to the same is overruled.

The next and most important exception to consider is item No. 72, being the sum of $5,150 paid to M. P. Hess. This item is made up of notes. It appears from the testimony that the decedent, in the latter years of his life, was, to a great extent, unable to attend to business; that he was also the owner of large farms; that for many years preceding his death and during his illness, and up to the time of his death, Estes was assisting him in the management of his affairs; that Hess, who was born and raised in the immediate neighborhood of the decedent, confiding and having implicit confidence in the honesty and integrity of the decedent, came to an understanding with the decedent that such money as he might from time to time earn was to be deposited and kept for safekeeping without interest, and subject to call at any time; that in pursuance of this understanding he gave to Estes, except on one occasion, money, for which he received the notes on file, except the note dated the — day of ——, 18—, being the note dated after the death of Turpin. The testimony also shows that Estes had full knowledge of the understanding between Hess and the decedent, and was acting in relation thereto with the full knowledge and consent of the decedent. It is contended that the claim of Hess is not a valid claim against this estate. In the determination of this question it is not necessary to consider whose debt it is, if it is not the debt of

Estate of Turpin, Deceased.

this estate, and in determining that question I have placed Hess in the attitude of a plaintiff seeking now to recover from this estate the amounts due him by virtue of this agreement, ignoring for the time being the fact that the claim was allowed by the administrators and paid by them. In that attitude the rule of evidence must be applied to him as in any other case, namely, that he must satisfy the court, by a fair preponderance of the evidence, that he is entitled to this money. In pursuing this course, it was incumbent upon him to show that he did in fact deposit this money with the decedent. He offered himself as a witness; and I desire to say that his testimony is strong and convincing, and stands uncontradicted, and supported by other testimony. No testimony was offered to disprove anything that Hess said, and nothing can be inferred to the contrary, except that these notes were signed by Estes, and on their face they appear as promissory notes, for money loaned Estes. Yet, as I have said, his testimony was so clear and his explanation so satisfactory, and supported, too, by other evidence and circumstances, that to hold otherwise would be to disregard all of the testimony and consider it unworthy of belief. Whatever Hess's motive might have been in leaving this money on deposit without interest, and not making a demand for it until long after the death of E. S. Turpin, can not be considered in upholding a theory

unsupported by evidence that Hess never in fact deposited the money; nor can his motive have any effect upon the question involved. I am satisfied from the evidence before me that he deposited this money with E. S. Turpin; that the estate is justly indebted to him in that amount; and that the administrators, having allowed and paid the same, are entitled to a credit therefor. The exception will be overruled.